United States Court of Appeals
for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
September 26, 2024
Lyle W. Cayce
Clerk

No. 23-60468

───────────

United States of America,

*Plaintiff—Appellee,*

versus

Kenneth Bryan Ritchey,

*Defendant—Appellant.*

───────────────────────────────

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:21-CR-6-1

───────────────────────────────

Before Southwick and Duncan, *Circuit Judges*, and Kernodle, *District Judge*.[*]

Stuart Kyle Duncan, *Circuit Judge*:

    Defendant Kenneth Bryan Ritchey pled guilty of conspiracy to defraud the United States in connection with a scheme to overcharge the Department of Veterans Affairs ("VA") for medical supplies during the pandemic. Ritchey's 60-month prison sentence was based, in part, on the estimated fair market value ("FMV") of the masks and other items he sold

───────────

[*] United States District Judge for the Eastern District of Texas, sitting by designation.

at inflated prices. On appeal, Ritchey contends the district court low-balled the FMV based on economically unrealistic benchmarks, such as pre-pandemic prices. We agree and therefore VACATE Ritchey's sentence and REMAND for resentencing.

I.

Since October 2008, Ritchey has operated and controlled Gulf Coast Pharmaceuticals Plus, LLC ("GCPP"), a wholesale distributor of pharmaceutical products. Before the COVID-19 pandemic, GCPP did not normally acquire, market, or sell personal protective equipment ("PPE"). But from January 2020 to at least April 2020, Ritchey directed his employees to acquire tens of thousands of N-95 masks, procedural masks, and other PPE from wholesalers, distributors, big box stores, and online retailers across many states. During that period, GCPP's invoices reflected that it paid, on average, about $3.49 per N-95 mask and $1.16 per procedural mask.

Ritchey directed employees to resell the PPE to various healthcare providers, including the VA, at inflated prices. For example, the N-95 masks GCPP acquired for $3.49 per mask were resold for $20 to $25 per mask. Ultimately, between January and April 2020, Ritchey and his employees billed and received more than $2 million from various healthcare providers, including more than $270,000 from the VA.

In a superseding indictment, a grand jury charged Ritchey with six counts, including conspiracy to defraud the United States in violation of 18 U.S.C. § 371. The Government alleged Ritchey and his co-conspirators "interfered with the VA's responsibility and obligation to purchase PPE at fair and reasonable prices through quoting prices that exceed prevailing market price, utilizing high pressure sales tactics, omitting GCPP's actual costs of PPE, omitting the source of the PPE, and sending correspondence attempting to justify GCPP's excessive pricing."

No. 23-60468

In March 2023, Ritchey pled guilty of violating § 371 and signed a written plea agreement the same day.[1] The remaining counts were dismissed.

The Sentencing Guidelines set Ritchey's offense level, in part, according to a reasonable estimate of the pecuniary "loss" he caused. *See* U.S.S.G. § 2B1.1(b); *id.* cmt. 3(A), (C). This "loss" is determined by subtracting "the fair market value of the property returned and the services rendered . . . to the victim before the offense was detected" from the amount the victim actually paid for the goods or services. *Id.* cmt. 3(E)(i). The probation officer who authored Ritchey's presentence report ("PSR") explained that "to calculate fair market value (FMV), [he] focused on what these facilities reported they had paid for these items, both pre-pandemic and during the pandemic, from more honest sources of PPE supplies." Here, the base level offense was 6. To this, 16 levels were added for the amount of loss caused, 2 levels were added because Ritchey engaged in "mass marketing," and 4 levels were added because Ritchey led a conspiracy of five or more participants. Finally, a 3-level downward adjustment was applied because Ritchey accepted responsibility. This resulted in a total offense level of 25.

Ritchey objected to the PSR's loss calculation, particularly the FMV calculations. In support, Ritchey proffered an expert report from Dr. Michael D. Noel, an economics professor at Texas Tech University. The report's central thrust was that: "The market price . . . is defined as the price that equates supply and demand and is the price that reflects the fair market value of the product. . . . In the competitive PPE market, this means that buyers necessarily paid a price that was either equal to, or *below*, the fair market value of that limited supply." (emphasis in original).

---

[1] Ritchey's plea agreement contained an appeal waiver, but the Government declines to enforce it in this appeal.

3

At the sentencing hearing, Ritchey renewed his objection to the FMV calculation. He elicited testimony from Dr. Noel, who testified in accordance with his report. The district court declined to accept Dr. Noel's opinion, however. The court instead adopted a definition of "fair market value" from *United States v. Cartwright*, 411 U.S. 546, 551 (1973)—specifically, "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of the relevant facts." The court also criticized Dr. Noel for failing to consider whether Ritchey's actions may have distorted the PPE market.

Accordingly, the court overruled Ritchey's objection and adopted the PSR. Based on the PSR's calculations, the court set Ritchey's offense level at 25, his criminal history category at I, and his imprisonment range at 57 to 71 months (which, given the 60-month statutory maximum, became 57 to 60 months). The bulk of the offense level (16 of the 25 levels) was based on the amount of loss caused to the victims. This was calculated by subtracting the FMV of the products sold from the amount the suppliers actually paid for them. The court found the total loss was $2,328,347.14. This falls in the loss range of $1,500,000–$3,500,000, which adds 16 levels to the base offense. *See* U.S.S.G. § 2B1.1(b).

After considering the 18 U.S.C. § 3553(a) factors, the court sentenced Ritchey to 60 months and imposed $281,086.32 in restitution, a $50,000 fine, and three years' supervised release. Finally, the court stated that, based on the record and § 3553(a) factors, it would have "imposed the same sentence as a variance or non-guideline sentence" even if it had erred in the Guidelines calculation or in resolving any objections.

Following entry of final judgment, Ritchey timely appealed.

No. 23-60468

## II.

When reviewing a criminal sentence, we engage in a two-step process. *United States v. Pena*, 91 F.4th 813, 817 (5th Cir. 2024). We first "consider[ ] whether the district court committed any significant procedural errors and only then, if [we] find[ ] no such errors, [we] review[ ] the substantive reasonableness of the sentence." *United States v. Parkerson*, 984 F.3d 1124, 1127 (5th Cir. 2021) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). "Although we review the district court's loss calculations for clear error, we review the district court's *method* of determining the amount of loss, as well as its interpretations of the meaning of a sentencing guideline, *de novo*." *United States v. Harris*, 821 F.3d 589, 601 (5th Cir. 2016) (quoting *United States v. Nelson*, 732 F.3d 504, 520 (5th Cir. 2013)).

"If there is a significant procedural error, then we remand unless the proponent of the sentence" can demonstrate that the error was harmless by "show[ing] that the error did not affect the determination of the imposed sentence." *Pena*, 91 F.4th 813, 817 (citing *United States v. Coto-Mendoza*, 986 F.3d 583, 586 (5th Cir. 2021)). To prove that an error is harmless, the Government must "proffer[ ] sufficient evidence to convince the appellate court that the district court would have imposed the same sentence, absent the error." *United States v. Ibarra–Luna*, 628 F.3d 712, 718–19 (5th Cir. 2010) (quoting *United States v. Tello*, 9 F.3d 1119, 1130 (5th Cir. 1993)). Moreover, if the court made a mistake in calculating the Sentencing Guidelines, then it must "show that the . . . sentence the district court imposed was not influenced in any way by the erroneous Guidelines calculation." *Id*.

## III.

### A.

On appeal, Ritchey renews his objection to the FMV calculation. Among other things, he argues it was error to calculate FMV by reference to

5

PPE prices prevailing *before* the pandemic, as opposed to prices prevailing at the time the goods were sold. We agree with Ritchey that the district court erred in this regard.

It is true that the district court "need only make a reasonable estimate of the loss" because it "is in a unique position to assess the evidence and estimate the loss based upon that evidence." U.S.S.G. § 2B1.1 cmt. 3(C). The court errs, however, if it "overemphasize[s] [its] discretion as factfinder at the expense of economic analysis." *United States v. Olis*, 429 F.3d 540, 548 (5th Cir. 2005). That is what happened here.

In computing FMV, the sentencing court must "utilize a 'realistic, economic approach.'" *Harris*, 821 F.3d at 606 (quoting *United States v. Lige*, 635 F.3d 668, 671 (5th Cir. 2011)). While the Guidelines do not define FMV, the Supreme Court once referred to this definition: "[T]he price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of the relevant facts." *Cartwright*, 411 U.S. at 551 (citation omitted). Black's Law Dictionary has a similar definition: "The price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's length transaction; the point at which supply and demand intersect." *Fair Market Value*, Black's Law Dictionary (12th ed. 2024). While neither definition settles the issue before us, we keep them in mind as we assess whether the district court took a "realistic, economic" approach to estimating the FMV of the items Ritchey sold here.

We highlight two flaws in the FMV calculation that, in our view, diverge from economic realism. First, the PSR calculated the price of surgical and other masks based on "pre-pandemic (and some pandemic) prices that [various] facilities paid for these masks." Under this approach, the PSR arrived at an average price of 37 cents per mask and used this as the

FMV. Contrast this with the $1.16 per procedural mask that GCPP actually paid, on average, to acquire those masks. Low-balling the FMV in this way would have understated any credit due to Ritchey.

Second, the PSR relied entirely on 3M pricing to determine the fair market value of N-95 masks even though 3M "did not raise prices during the pandemic." This led the PSR to conclude that the fair market value of all but one model of N-95 masks was worth less than $2, with the highest-priced model valued at $2.78. But GCPP's invoices reflect that it paid, on average, approximately $3.49 per N-95 mask. While 3M did provide masks to the VA during the pandemic, the record indicates that it could not keep up with demand. In fact, 3M ended up rationing its inventory between the VA and other healthcare facilities, having them wait "months" to receive masks. The extent of 3M's inability to meet demand may have been based, in part, on the very fact that 3M's prices remained stagnant during the pandemic. Thus, basing the FMV calculation entirely on one supplier who made the choice not to adjust prices to changing market conditions also departs from "realistic, economic" reasoning. *Harris*, 821 F.3d at 606 (quoting *Lige*, 635 F.3d at 671). While the prices of 3M, as a large distributer of PPE, certainly may be relevant to calculating the FMV, they alone cannot reasonably be relied upon to calculate the FMV.

Defending the FMV calculation, the Government merely asserts that "[b]ecause Ritchey admitted that he 'hiked prices dramatically' and charged excessive prices, the PSR 'focused on what the[] facilities reported they had paid for the items, both pre-pandemic and during the pandemic, from more honest sources of PPE supplies.'" But the Government fails to explain why it was reasonable to rely on *pre-pandemic* prices or to rely exclusively on 3M's retail prices for N-95 masks.

Accordingly, we agree with Ritchey that the district court erred in calculating the FMV of the items on which his loss calculation was based.

## B.

Not all sentencing errors require reversal, however. "Even if a court did not consider the correct range, an error in the guidelines calculation can still be considered harmless if the proponent of the sentence 'convincingly demonstrates both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing.'" *United States v. Richardson*, 676 F.3d 491, 511 (5th Cir. 2012) (quoting *Ibarra–Luna*, 628 F.3d at 714).

At the end of the sentencing hearing, the district court stated:

> In the event the Court erred in calculating any of the sentencing guidelines in this case, or resolving any of the objections, the Court would've imposed the same sentence as a variance or non-guideline sentence based upon the record in this matter, the nature and circumstances of the offense, and the other 3553 factors as the Court has discussed them on the record here today.

This statement is relevant to the harmless error inquiry, but it is not decisive. "[I]t is not enough for the district court to say the same sentence would have been imposed but for the error. 'The government must point to evidence in the record that convincingly demonstrates the district court would impose the *same* sentence for the *same* reasons.'" *United States v. Tanksley*, 848 F.3d 347, 353 (5th Cir. 2017) (cleaned up) (quoting *United States v. Hernandez-Montes*, 831 F.3d 284, 296 (5th Cir. 2016)). So, for instance, in *Tanksley*, we found an error not harmless—despite the district court's statement that "this is the sentence the Court would . . . impose" even if it miscalculated the sentence under the Guidelines—because the

8

record failed to show "that the within-Guidelines sentence imposed . . . had nothing to do with the Guidelines calculation." *Id*.

So too here. As in *Tanksley*, we "cannot say 'with the requisite certainty' that the error was harmless." *Id*. (citing *Ibarra–Luna*, 628 F.3d at 719). In fact, the court suggested it chose Ritchey's within-Guidelines sentence in part because of the erroneous Guidelines calculation. The court stated that it "considered the advisory sentencing guideline computations" and that it "finds a sentence of 60 months to be appropriate *as the guideline sentence* in this case." (emphasis added).

But if the court miscalculated the FMV, such an error could significantly affect the applicable Guidelines range. The district court found the total loss was $2,328,347.14. If the loss were, instead, between $550,000 and $1,500,000, the Guidelines range would reduce to 46–57 months. U.S.S.G. § 2B1.1(b). If it were between $250,000 and $550,000, the range would shrink further to 37–46 months. *Id*.

The Government's harmless error argument relies on the district court's bald statement that it would have imposed the same sentence regardless of error. But the Government fails to grapple with our caselaw, discussed above, holding that such a statement does not invariably prove harmless error. To the contrary, where the court errs in its Guidelines calculation, a blanket statement that it would give the same sentence regardless does not, on its own, always suffice to "convincingly demonstrate . . . that the district court would have imposed the same sentence had it not made the error." *United States v. Guzman-Rendon*, 864 F.3d 409, 411 (5th Cir. 2017).[2]

---

[2] *See also United States v. Taylor*, No. 21-10017, 2022 WL 2752602, at *2 (5th Cir. July 14, 2022) ("Given the district court's references to the Guidelines, the statement

9

Accordingly, based on this record, we cannot find the sentencing error was harmless. We therefore vacate Ritchey's sentence and remand to the district court for resentencing in according with this opinion.[3]

Sentence VACATED; case REMANDED for resentencing.

---

disclaiming reliance on them is not enough to render the error harmless."); *Tanksley*, 848 F.3d at 353 ("[I]t is not enough for the district court to say the same sentence would have been imposed but for the error."); *U.S. v. Martinez-Romero*, 817 F.3d 917, 925 (5th Cir. 2016) (holding a Guidelines calculation error was "not harmless" even though the court "stated three times that even if the . . . enhancement for the attempted kidnapping was incorrect, it would nonetheless impose the same . . . sentence").

[3] We therefore need not consider the substantive reasonableness of the sentence. *See Parkerson*, 984 F.3d at 1127 ("A reviewing court should only proceed to the second step of the . . . inquiry if it finds no procedural error or only harmless error.").